PDK/FRAUD: USAO 2024R00444

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * CRIMINAL NO. PX24CR282 |
| | * |
| DARRYL F. BRITT, | * (Conspiracy to Commit Bribery of a |
| | * Public Official, 18 U.S.C. § 371; |
| Defendant | * Forfeiture, 18 U.S.C. § 981(a)(1)(C), |
| | * 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c)) |
| | * |

*******

### INFORMATION

### COUNT ONE
### (Conspiracy to Commit Bribery of a Public Official)

The United States of America charges that:

#### Introduction

At all times relevant to this Information, with all dates being approximate and inclusive:

1. The defendant, **DARRYL F. BRITT** ("**BRITT**"), a Florida resident, was the president of Company 1. Company 1 contracted with government agencies, including the United States Agency for International Development ("USAID"), to provide administrative and technology services. Company 1 maintained its headquarters in Washington, D.C. Since in and around 2004, the U.S. government has obligated approximately $271 million in funds in connection with Company 1's prime contracts with the U.S. government.

2. Coconspirator ("CC")-1, a Maryland resident, was a contracting officer at USAID, and as such, a public official as defined in Title 18, United States Code, Section 201(a)(1). USAID was a government agency headquartered in Washington, D.C., which led the United States Government's international development and disaster assistance to save lives,

reduce poverty, strengthen democratic governance, and help people emerge from humanitarian crises.

3. CC-2, a Maryland resident, was the founder, owner, and president of Company 2. Company 2 contracted with government agencies, including USAID, to provide consulting and other services, and maintained its headquarters in Towson, Maryland. Company 2 provided contract support to USAID in connection with its mission to provide humanitarian aid, such as a $100 million purchase agreement for humanitarian aid and support across Ukraine. Since in and around 2015, the U.S. government has obligated approximately $198 million in funds in connection with Company 2's prime contracts with the U.S. government. At times, CC-2's company (Company 2) hired CC-3's company (Company 3) and **BRITT**'s company (Company 1) as subcontractors on USAID contracts. Additionally, Company 2 received at least one subcontract from Company 1 to work on one of Company 1's USAID prime contracts.

4. CC-3, a Maryland resident, was the president of Company 3, which contracted with United States government agencies to provide Information Technology services, and which maintained its headquarters in Fulton, Maryland.

5. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ CC-4 worked at Company 1 and then was hired by USAID where CC-4 eventually became a contracting officer.

## The Conspiracy

6. Between in and around 2013 and in and around 2023, in the District of Maryland and elsewhere, the defendant,

**DARRYL BRITT,**

did knowingly combine, conspire, confederate, and agree with CC-1, CC-2, CC-3, CC-4, and others known and unknown, to commit an offense against the United States, namely, bribery of a

2

public official, that is, to corruptly give a thing of value to a public official with intent to influence an official act, in violation of 18 U.S.C. § 201(b)(1)(A).

## Manner and Means

7. It was part of the conspiracy that **BRITT** and his coconspirators bribed CC-1 repeatedly—through multiple payments and other things of value, gifts, and favors—in exchange for agreeing to influence the award of USAID contracts valued at hundreds of millions of dollars to **BRITT**'s company (Company 1), and CC-2's company (Company 2).

8. It was part of the conspiracy that **BRITT** obtained government contracts with USAID, including prime contracts through Company 1 and subcontracts through Company 2.

9. The conspiracy involved at least six USAID prime contracts valued at approximately $100 million awarded in exchange for bribes, including:

   a. between in and around 2013 and in and around 2015, the award of four contracts to Company 1 valued at approximately $45.8 million; and

   b. between in and around 2018 and in and around 2022, the award of two contracts to Company 2 (with Company 1 as a subcontractor) valued at approximately $54 million.

## Overt Acts

10. In furtherance of the conspiracy, and to effect the object of the conspiracy, the following overt acts, among others, were committed in the District of Maryland and elsewhere:

   a. On or about June 6, 2014, CC-1 texted CC-3, "I had a long talk with [BRITT] today …. We need to talk about the potential money losses you are incurring and the fact you're not filthy rich[.]" CC-3 replied, "I could/would be making a lot of money." CC-1 replied, "[T]he fact I have to ask you for money for BS stuff bothers the hell out of me … Like

I'm not smart enough to make millions for sourcing contracts[.]" CC-3 replied, "Believe me time will come." CC-1 replied that with "mounting debt I almost asked [**BRITT**] for a loan .... Or advance[.]"

  b. On or around August 8, 2014, a few weeks before Company 1 was awarded its second USAID contract, **BRITT** discussed with CC-3 ways to conceal bribe payments to CC-1. **BRITT** texted CC-3, "[I]f possible, give it to some other third party to give him. That way you can honestly say you never gave him anything … never give anything but cash to you know who."

  c. On or about October 2, 2015, **BRITT** sent a text message to CC-3 concerning how to conceal the source of funds for CC-3 to purchase a laptop computer for CC-1 on behalf of **BRITT**, stating, "You know you can bill me an 'administrative fee'. How much was it?" After CC-3 replied that it was $2,000, **BRITT** stated, "Let's talk today about your next invoice to me."

  d. In and around early 2017, **BRITT** and CC-2 formed a joint venture between Company 1 and Company 2 to bid on a USAID contract.

  e. On or about April 13, 2017, at **BRITT's** direction, a Company 1 employee emailed CC-1, copying **BRITT**, requesting permission to request a facility security clearance for Company 2 as a subcontractor for Company 1. CC-1 approved the request. During this period, **BRITT** continued to make bribe payments to CC-1 through CC-3 to obtain USAID contracts. CC-2 was aware of bribes from **BRITT** to CC-1.

  f. On or about September 27, 2017, **BRITT** emailed CC-2 about an upcoming meeting with CC-1. CC-2 asked **BRITT**, "What is this meeting regarding?" **BRITT**

responded, "A one on one introduction to [CC-1]. Wants to know you re: upcoming opportunities. Introduce you to the family :)".

      g.    On or about January 7, 2020, **BRITT** exchanged text messages with CC-3 to coordinate the monthly amount that CC-3 would pay to CC-1 in bribe payments. **BRITT** texted CC-3, "6500[.] I thought it was 4000" and "I gave you the wrong number ... 7500," referring to dollar amounts. **BRITT** thereafter arranged for a Company 1 employee to facilitate these bribe payments to CC-1.

18 U.S.C. § 371

## FORFEITURE ALLEGATION

The United States of America further alleges that:

1. Pursuant to Fed. R. Crim. P. 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c) in the event of the defendant's conviction under Count One of this Information.

2. Upon conviction of the offense alleged in Count One of this Information, the defendant,

**DARRYL F. BRITT,**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any of the property described above as being subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

Date: 9/26/24

/s/ Glenn S. Leon
Glenn S. Leon
Chief
United States Department of Justice
Criminal Division, Fraud Section

Date: 9/26/24

Erek L. Barron /PDK
Erek L. Barron
United States Attorney
United States Attorney's Office
District of Maryland